UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- X
:
SEGERSTROM CENTER FOR THE ARTS,   : CIVIL ACTION NO.:
:
Plaintiff,   :
: **COMPLAINT**
:
vs.   :
: **JURY TRIAL DEMANDED**
ARDANI ARTISTS MANAGEMENT, INC.,   :
SERGEI DANILIAN and GAIANE   :
DANILIAN,   :
:
Defendant.   :
:
---------------------------------------------------------- X

Plaintiff Segerstrom Center for the Arts ("Plaintiff" or "Segerstrom") alleges as follows for its Complaint against defendants Ardani Artists Management, Inc. ("Ardani"), Sergei Danilian ("Sergei"), and Gaiane Danilian ("Gaiane" and together with Ardani and Sergei, "Defendants"):

## NATURE OF THE ACTION

1. This action seeks to recover $650,000 Plaintiff advanced to Ardani and avoid the transfer of Sergei's New York condominium to Gaiane which were made as part of Sergei's Ponzi scheme using funds advanced from performing arts centers to pay off prior liabilities. In 2019, Segerstrom advanced $650,000 to Ardani to arrange for and manage three ballet company performances that would take place at Segerstrom Hall in Orange County, California, in 2020 and 2021. Unbeknownst to Segerstrom, Sergei, Ardani's President and CEO, was running a Ponzi scheme in which he was using the money advanced to him by one performance venue to pay for performances that had already happened at different venues. Recognizing that, as with most Ponzi schemes, the music would inevitably end as soon as new funds were insufficient to pay for current obligations, on July 11, 2017, Sergei transferred his interest in a condominium located at 146 W 57th Street, Apt. 40F, New York, New York 10019 to Gaiane (the "Transfer"). When Gaiane received the transfer, she knew, or was on inquiry notice, that the transfer was part of Sergei's

1

Ponzi scheme to prevent his assets from being available to satisfy claims of his creditors. Segerstrom seeks to recover its $650,000 and avoid the Transfer.

## JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction over this action because Segerstrom and each of the Defendants are citizens of different states and the value of the matter in controversy exceeds the sum of $75,000 exclusive of interests and costs, such that jurisdiction is expressly conferred in accordance with 28 U.S.C. § 1332(a).

3. The Court has personal jurisdiction over Defendants at least because, on information and belief, Defendants reside and conduct business in the State of New York, including, on information and belief, within this judicial district.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, on information and belief, Defendants reside in this judicial district.

## THE PARTIES

5. Segerstrom is a California corporation, with its principal place of business located at 600 Town Center Drive, Costa Mesa, California 92626.

6. Ardani is a New York corporation, with its principal place of business located at 130 W 56th Street, Floor 5M, New York, New York 10019. Ardani was founded by Sergei and Gaiane to produce and manage ballet productions.

7. Sergei is an individual who, on information and belief, is a citizen of Russia residing at 146 W 57th Street, Apt. 40F, New York, New York 10019. Sergei is the President and CEO of Ardani.

8. Gaiane is an individual who, on information and belief, is a citizen of Russia residing at 146 W 57th Street, Apt. 40F, New York, New York 10019. Gaiane is Sergei's wife and co-founder of Ardani.

9. On information and belief, Ardani, Sergei, and Gaiane are alter egos of each other, in that (i) Sergei and Gaiane treat the assets of Ardani as their own; (ii) Sergei and Gaiane hold out that they are personally liable for the debts of Ardani; (iii) Sergei and Gaiane commingle

and fail to segregate the funds and other assets of Ardani with their own; (iv) Sergei and Gaiane divert the corporate funds and assets of Ardani for unauthorized or wrongful uses; (v) Sergei and Gaiane are the sole owners and officers of Ardani; (vi) Sergei and Gaiane use the Ardani corporate entity as a mere shell, instrumentality or conduit to conduct a single venture; (vii) Sergei, Gaiane, and Ardani fail to maintain arm's length relationships among each other; (viii) Ardani fails to maintain adequate corporate records and/or disregards legal formalities; (ix) Ardani has inadequate corporate capitalization; (x) Sergei and Gaiane use Ardani with the intent to avoid performance by wrongfully using a corporate entity as a shield against personal liability; and (xi) there would be an inequitable result if the acts in question were treated as those of Ardani alone.

## FACTUAL ALLEGATIONS

### *Sergei's Fraudulent Scheme*

10. Between March 2019 and October 2019, Segerstrom and Ardani entered into three written contracts with Ardani to arrange for and manage three ballet company performances to take place at Segerstrom Hall.

11. On March 8, 2019, Segerstrom and Ardani agreed for Ardani to arrange for and manage the La Scala Theatre Ballet Company with the Mikhailovsky Orchestra to perform at Segerstrom Hall from July 29, 2020 to August 2, 2020 (the "La Scala Theatre Ballet Contract"). In exchange Segerstrom agreed to pay Ardani $1,100,000, with $100,000 to be advanced upon signing the contract and $300,000 to be advanced on January 31, 2020.

12. On October 4, 2019, Segerstrom and Ardani agreed for Ardani to arrange for and manage the Mikhailovsky Ballet and Orchestra to perform at Segerstrom Hall from November 10, 2020 to November 15, 2020 (the "Mikhailovsky Ballet Contract"). In exchange, Segerstrom agreed to pay Ardani $750,000, with $150,000 to be advanced upon signing the contract.

13. On October 4, 2019, Segerstrom and Ardani agreed for Ardani to arrange for and manage the Eifman Ballet Company to perform at Segerstrom Hall from April 30, 2021 to May 2, 2021 (the "Eifman Ballet Contract"). In exchange Segerstrom agreed to pay Ardani $375,000,

3

with $100,000 to be advanced upon signing the contract.

14.     According to each of the contracts, Ardani was to pay for everything needed for the ballet production, including, the costs for the ballet companies, conductors, orchestras, costumes, translators, road crew and technical staff, international and domestic travel, hotel accommodations, and food allowances.

15.     Sergei signed each of the contracts on behalf of Ardani.

16.     As of March 2020, Segerstrom duly performed each of the contracts, including advancing a total of $650,000 to Sergei for Ardani to arrange for and manage the three ballet productions.

17.     On March 25, 2020, Segerstrom asked Sergei about the disposition of the advanced funds in the event the COVID-19 pandemic prevented the performances. Sergei responded that Segerstrom should have no concerns about the $650,000 because the performances could be postponed to another date.

18.     By June 2020, it was evident that COVID-19 would prevent the performances from continuing as scheduled. Segerstrom thus requested that Sergei return the $650,000 that had not be used to arrange for or manage Segerstrom's performances. Sergei responded that Ardani had no money, notwithstanding the $650,000 Segerstrom advanced for the sole purpose of the three ballet productions that would not take place.

19.     Sergei did not use any of the $650,000 to arrange for or manage the three ballet productions for Segerstrom. Each of the ballet companies confirmed that they received no payments from Ardani or Sergei. Sergei instead used Segerstrom's $650,000 to pay different ballet companies for prior performances that took place at venues other than Segerstrom.

20.     In sum and substance, rather than holding in trust the $650,000 Segerstrom advanced, Segerstrom learned that Sergei had been operating a Ponzi scheme by using funds advanced for specific ballet performances to pay off obligations owed for previous ballet performances at different venues.

*Sergei Seeks To Avoid Creditors By Transferring His Property*

21. Since 2005, Sergei and Gaiane each owned 50% of a condominium located 146 W 57th Street, Apt. 40F, New York, New York 10019 (the "Property").

22. On July 11, 2017, Sergei transferred his 50% interest in the Property to Gaiane for $10 making Gaiane the sole owner of the Property (the "Transfer").

23. On information and belief, Sergei made the Transfer to avoid creditors, such as Segerstrom, because he knew his fraudulent scheme would inevitably be uncovered once incoming funds became insufficient to pay off existing obligations.

24. On information and belief, Sergei was insolvent at the time of the Transfer and the Transfer was made as part of a scheme with actual fraudulent intent.

25. The Transfer was made for grossly inadequate consideration. In 2015, the Property was listed for sale at $1,500,000. Thus, Sergei's 50% interest in the property was worth approximately $750,000. There was no legitimate reason for Sergei to transfer his 50% ownership in the Property to Gaiane for $10.

## COUNT I

### Breach of Contract Against Ardani (La Scala Theatre Ballet Contract)

26. Segerstrom repeats and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 25 above, inclusive, as though fully set forth herein.

27. The La Scala Theatre Ballet Contract is a valid and enforceable contract between the parties where Segerstrom agreed to pay Ardani for Ardani to arrange for and manage a full finished ballet production from the La Scala Theatre Ballet Company and Mikhailovsky Orchestra.

28. Up until the time of Ardani's breach of the La Scala Theatre Ballet Contract, Segerstrom duly performed all obligations under the scope of the La Scala Theatre Ballet Contract by advancing $400,000 to Ardani.

29. Ardani materially breached and/or repudiated the La Scala Theatre Ballet Contract by failing to take action to arrange for and manage a ballet production with the advanced

$400,000. Ardani instead used the $400,000 to pay off different ballet companies for prior performances that took place at venues other than Segerstrom.

30. Segerstrom has suffered damages as a result of Ardani's breach of contract in an amount to be proven at trial, but not less than $400,000, together with interest and reasonable attorneys' fees, disbursements, and costs of the action.

## COUNT II

### Breach of Contract Against Ardani (Mikhailovsky Ballet Contract)

31. Segerstrom repeats and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 30 above, inclusive, as though fully set forth herein.

32. The Mikhailovsky Ballet Contract is a valid and enforceable contract between the parties where Segerstrom agreed to pay Ardani for Ardani to arrange for and manage a full finished ballet production from the Mikhailovsky Ballet and Orchestra.

33. Up until the time of Ardani's breach of the Mikhailovsky Ballet Contract, Segerstrom duly performed all obligations under the scope of the Mikhailovsky Ballet Company by advancing $150,000 to Ardani.

34. Ardani materially breached and/or repudiated the Mikhailovsky Ballet Contract by failing to take action to arrange for and manage a ballet production with the advanced $150,000. Ardani instead used the $150,000 to pay off different ballet companies for prior performances that took place at venues other than Segerstrom.

35. Segerstrom has suffered damages as a result of Ardani's breach of contract in an amount to be proven at trial, but not less than $150,000, together with interest and reasonable attorneys' fees, disbursements, and costs of the action.

## COUNT III

### Breach of Contract Against Ardani (Eifman Ballet Contract)

36. Segerstrom repeats and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 35 above, inclusive, as though fully set forth herein.

37. The Eifman Ballet Contract is a valid and enforceable contract between the parties

where Segerstrom agreed to pay Ardani for Ardani to arrange for and manage a full finished ballet production from the Eifman Ballet Company.

38. Up until the time of Ardani's breach of the Eifman Ballet Contract, Segerstrom duly performed all obligations under the scope of the Eifman Ballet Company by advancing $100,000 to Ardani.

39. Ardani materially breached and/or repudiated the Eifman Ballet Contract by failing to take action to arrange for and manage a ballet production with the advanced $100,000. Ardani instead used the $100,000 to pay off different ballet companies for prior performances that took place at venues other than Segerstrom.

40. Segerstrom has suffered damages as a result of Ardani's breach of contract in an amount to be proven at trial, but not less than $100,000, together with interest and reasonable attorneys' fees, disbursements, and costs of the action.

## COUNT IV

### Conversion Against Defendants

41. Segerstrom repeats and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 40 above, inclusive, as though fully set forth herein.

42. Segerstrom has a right to possession of the $650,000 advanced from Segerstrom to Ardani in connection with the ballet performances because, among other things, Ardani did not arrange for or manage any of the ballet performances.

43. Ardani intentionally and without authorization converted and assumed control over the $650,000 advanced by Segerstrom by refusing the return the monies and claiming such monies as its own.

44. Segerstrom has suffered damages as a result of Defendants' conversion in an amount to be proven at trial, but not less than $650,000, together with interest and reasonable

attorneys' fees, disbursements, and costs of the action.

## COUNT V

### Unjust Enrichment Against Defendants

45. Segerstrom repeats and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 45 above, inclusive, as though fully set forth herein.

46. Segerstrom advanced $650,000 for the benefit of Ardani with the reasonable expectation that Ardani would arrange for and manage ballet performances to take place at Segerstrom Hall.

47. Ardani has refused Segerstrom's demands for the $650,000 to be returned.

48. By virtue of Ardani's failure to return the $650,000 and failure to arrange for and manage any ballet performances at Segerstrom Hall, Ardani has been unjustly enriched.

49. As a direct and proximate result of Defendants' wrongful actions, Segerstrom has been damaged in an amount to be proven at trial, but not less than $650,000, together with interest and reasonable attorneys' fees, disbursements, and costs of the action.

## COUNT VI

### Fraud Against Sergei and Ardani

50. Segerstrom repeats and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 49 above, inclusive, as though fully set forth herein.

51. Sergei, on behalf of Ardani, intentionally made false representations to Segerstrom that the payments Segerstrom advanced to Ardani would be used for Ardani to arrange for and manage performances by the La Scala Theatre Ballet Company, Mikhailovsky Ballet and Orchestra, and Eifman Ballet Company to perform at Segerstrom Hall.

52. Sergei represented, on behalf of Ardani, that he would use the $650,000 advanced by Segerstrom to contribute to a full finished ballet production, including, the costs for the ballet companies, conductors, orchestras, costumes, translators, road crew and technical staff, international and domestic travel, hotel accommodations, and food allowances.

53. Sergei's representations were false. Sergei knew the representations were false

because, at the time Sergei made the representations, he did not intend for Ardani to use the $650,000 advanced by Segerstrom to contribute to a full finished ballet production for Segerstrom. Instead, Sergei intended to use the $650,000 to pay off debts he incurred to third parties for prior ballet performances at different venues.

54. Sergei made the representations with the intent to deceive Segerstrom and for the purpose of inducing Segerstrom to advance funds to Ardani.

55. Segerstrom justifiably relied on Sergei's representations in entering into the contracts with Ardani. Segerstrom would not have entered into the contracts if it knew Ardani and Sergei were using Segerstrom's money to fund unrelated prior performances and not Segerstrom's performances. Segerstrom's reliance was reasonable because Ardani had previously arranged for and managed ballet performances for Segerstrom without problems.

56. Sergei knew and intended for Segerstrom to rely on his representations.

57. As a direct and proximate result of Sergei and Ardani's acts and omissions, Segerstrom has suffered damages in an amount to be determined at trial, but not less than the $650,000 advanced to Ardani.

58. On information and belief, Sergei and Ardani's actions were willful, wanton, and malicious entitling Segerstrom to punitive damages.

## COUNT VII

### Fraudulent Conveyance Against Sergei and Gaiane
### N.Y. Debt. & Cred. §§ 276, 276-a, 278, and 279

59. Segerstrom repeats and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 58 above, inclusive, as though fully set forth herein.

60. The Transfer constituted a transfer of Sergei's property.

61. The Transfer was made within six years of the filing of this action.

62. The Transfer was made with actual intent to hinder, delay or defraud entities to which Sergei was or became indebted to or after the date that Transfer was made. Sergei caused

the Transfer for the benefit of Gaiane in furtherance of a fraudulent scheme.

63. At the time of the Transfer, Gaiane was aware or should have been aware of Sergei's fraudulent scheme and received the Transfer without good faith and with knowledge of its avoidability.

64. Pursuant to N.Y. Debt. & Cred. §§ 276, 278, and 279, Segerstrom is entitled to judgement (i) avoiding the Transfer, (ii) directing that the Transfer be set aside, (iii) requiring Gaiane, as recipient of the Transfer, return the Transfer, or the value thereof, to Segerstrom, and (iv) recovering attorneys' fees from Sergei.

## COUNT VIII

### Fraudulent Conveyance Against Sergei and Gaiane
### N.Y. Debt. & Cred. §§ 273, 278, and 279

65. Segerstrom repeats and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 64 above, inclusive, as though fully set forth herein.

66. The Transfer constituted a transfer of Sergei's property.

67. Sergei did not receive fair consideration for the Transfer.

68. Sergei was insolvent at the time the Transfer was made or, in the alternative, Sergei became insolvent as a result of the Transfer.

69. At the time of the Transfer, Gaiane was aware or should have been aware of Sergei's fraudulent scheme and received the Transfer without good faith and with knowledge of its avoidability.

70. Pursuant to N.Y. Debt. & Cred. §§ 273, 278, and 279, Segerstrom is entitled to judgement (i) avoiding the Transfer, (ii) directing that the Transfer be set aside, (iii) requiring Gaiane, as recipient of the Transfer, return the Transfer, or the value thereof, to Segerstrom.

## COUNT IX

### Fraudulent Conveyance Against Sergei and Gaiane
### N.Y. Debt. & Cred. §§ 274, 278, and 279

71. Segerstrom repeats and incorporates herein by reference each and every

allegation contained in Paragraphs 1 through 70 above, inclusive, as though fully set forth herein.

72. The Transfer constituted a transfer of Sergei's property.

73. Sergei did not receive fair consideration for the Transfer.

74. At the time Sergei made the Transfer, Sergei was engaged in, or was about to engage in, a business or transaction for which the property remaining in his hands after the Transfer constituted unreasonably small capital.

75. At the time of the Transfer, Gaiane was aware or should have been aware of Sergei's fraudulent scheme and received the Transfer without good faith and with knowledge of its avoidability.

76. Pursuant to N.Y. Debt. & Cred. §§ 274, 278, and 279, Segerstrom is entitled to judgement (i) avoiding the Transfer, (ii) directing that the Transfer be set aside, (iii) requiring Gaiane, as recipient of the Transfer, return the Transfer, or the value thereof, to Segerstrom.

## COUNT X

### Fraudulent Conveyance Against Sergei and Gaiane
### N.Y. Debt. & Cred. §§ 275, 278, and 279

77. Segerstrom repeats and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 76 above, inclusive, as though fully set forth herein.

78. The Transfer constituted a transfer of Sergei's property.

79. Sergei did not receive fair consideration for the Transfer.

80. At the time Sergei made the Transfer, Sergei had incurred, was intending to incur, and believed that he would incur debts beyond his ability to pay them as the debts matured.

81. At the time of the Transfer, Gaiane was aware or should have been aware of Sergei's fraudulent scheme and received the Transfer without good faith and with knowledge of its avoidability.

82. Pursuant to N.Y. Debt. & Cred. §§ 275, 278, and 279, Segerstrom is entitled to judgement (i) avoiding the Transfer, (ii) directing that the Transfer be set aside, (iii) requiring Gaiane, as recipient of the Transfer, return the Transfer, or the value thereof, to Segerstrom.

**DEMAND FOR JURY TRIAL**

Segerstrom demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Segerstrom respectfully requests that the Court enter judgment in favor of Segerstrom and against Sergei as follows:

1. On Count I, judgment against Ardani in an amount not less than $400,000, together with reasonable attorneys' fees, disbursements, and costs of the action;

2. On Count II, judgment against Ardani in an amount not less than $150,000, together with reasonable attorneys' fees, disbursements, and costs of the action;

3. On Count III, judgment against Ardani in an amount not less than $100,000, together with reasonable attorneys' fees, disbursements, and costs of the action;

4. On Count IV, judgment against Defendants in an amount not less than $650,000, together with reasonable attorneys' fees, disbursements, and costs of the action;

5. On Count V, judgment against Defendants in an amount not less than $650,000, together with reasonable attorneys' fees, disbursements, and costs of the action;

6. On Count VI, judgment against Sergei and Ardani in an amount not less than $650,000, together with reasonable attorneys' fees, disbursements, and costs of the action;

7. On Count VII, pursuant to N.Y. Debt. & Cred. §§ 276, 276-a, 278, and 279: (i) avoiding the Transfer, (ii) directing that the Transfer be set aside, (iii) recovering the Property, or the value thereof, from Gaiane, and (iv) recovering attorneys' fees;

8. On Count VIII, pursuant to N.Y. Debt. & Cred. §§ 273, 278, and 279: (i) avoiding the Transfer, (ii) directing that the Transfer be set aside, (iii) recovering the Property, or the value thereof, from Gaiane;

9. On Count IX, pursuant to N.Y. Debt. & Cred. §§ 274, 278, and 279: (i) avoiding the Transfer, (ii) directing that the Transfer be set aside, (iii) recovering the Property, or the value thereof, from Gaiane;

10. On Count X, pursuant to N.Y. Debt. & Cred. §§ 275, 278, and 279: (i) avoiding the Transfer, (ii) directing that the Transfer be set aside, (iii) recovering the Property, or the value thereof, from Gaiane;

11. On all Counts, pursuant to N.Y. CPLR 5001 and 5004, awarding Segerstrom prejudgment interest from the date of the Transfer;

12. Awarding Segerstrom all applicable interest, costs, disbursements of this action; and

13. Award Segerstrom any and all such other and further relief as the Court deems just and proper.

Dated:  August 9, 2021

*/s/ Michael R. Yellin*
Michael Yellin
**COLE SCHOTZ P.C.**
1325 Avenue of the Americas, 19th Fl.
New York, New York 10019
Telephone: 212-752-8000
Facsimile:  212-752-8393
myellin@coleschotz.com

**RUTAN & TUCKER, LLP**
Michael D. Adams (*pro hac vice application forthcoming*)
Seth M. Jessee
18575 Jamboree Road, 9th Floor
Irvine, California 92612
Tel: (714) 641-5100
madams@rutan.com
sjessee@rutan.com

Attorneys for Plaintiff
*SEGERSTROM CENTER FOR THE ARTS*